**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| WARRIN CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No._____ |
| | ) | |
| | ) | Division_____ |
| XPO LOGISTICS FREIGHT, INC. | ) | |
| | ) | |
| Defendant. | ) | REQUEST FOR JURY TRIAL |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Warrin Clark ("Plaintiff"), by and through his attorneys, and brings this Complaint for Damages against Defendant XPO Logistics Freight, Inc. ("Defendant"), and alleges and states as follows:

**Parties and Jurisdiction**

1. Plaintiff is a male citizen of the United States, residing in Kansas City, Platte County, Missouri.

2. Defendant is a Foreign For Profit Corporation organized under the laws of Delaware. At all relevant times, Defendant was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

3. Defendant conducts substantial and continuous business and has substantial and numerous contacts with the State of Kansas and Wyandotte County.

4. Plaintiff is an employee within the meaning of the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§1981"), and the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

5. Defendant is an "employer" within the meaning of Title VII, the ADAAA, §1981, and the FMLA.

6. At all relevant times Defendant has maintained and operated a place of business at 234 East Donovan Road, Kansas City, Wyandotte County, Kansas 66115.

7. A substantial part of the events or omissions giving rise to the claims occurred in the District of Kansas.

8. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1391(b).

### Administrative Procedures

9. On or about August 30, 2019, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Defendant on the basis of discrimination and retaliation (attached as Exhibit 1 and incorporated herein by reference).

10. On or about November 12, 2019, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") an amended charge of discrimination against Defendant on the basis of discrimination and retaliation (attached as Exhibit 2 and incorporated herein by reference).

11. On or about March 31, 2020, the EEOC issued to Plaintiff his Notice of Right to Sue (attached as Exhibit 3 and incorporated herein by reference) and this lawsuit was filed within 90 days of the issuance of the EEOC's Notice of Right to Sue.

12. The aforesaid charges of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC

investigation, which could reasonably be expected to have grown out of the charges of discrimination.

13. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

**General Allegations Common to All Counts**

14. Plaintiff (black) was hired to work for Defendant on or about August 13, 2018, as an Apprentice Mechanic.

15. In approximately late 2018, Team Lead Isaac McCorkle ("Team Lead McCorkle") (white) stated that he was looking for a house to buy, but he did not want to be in an area around a whole bunch of "coloreds."

16. Team Lead McCorkle would also refer to certain types of music as "colored music."

17. In approximately December 2018 or January 2019, Plaintiff worked on the third shift with Team Lead McCorkle and Mechanic Malano Shepard ("Mechanic Shepard") (black).

18. Shortly thereafter, Team Lead McCorkle quit and told people, "I don't want to work with these niggers."

19. Notably, Supervisor Kevin Calhoun ("Supervisor Calhoun") (white) was aware of Team Lead McCorkle's racist comments.

20. Other employees in the shop have made comments that Plaintiff was slow because of his skin color, and that the only reason he was hired was because of his skin color.

21. One employee in the shop complained that the whole shop was "turning black."

22. On one occasion, Lead Mechanic Wesley Herman ("Lead Mechanic Herman") (white) was called a "nigger lover."

3

23. Lead Mechanic Herman reported racist comments and discrimination that was happening in the workplace to Supervisor Calhoun on multiple occasions.

24. A noose was hung on the dock inside the door where all employees and mechanics had to walk through to get to the shop on multiple occasions.

25. Notably, Human Resources was aware of this conduct but did not address it.

26. Throughout Plaintiff's employment with Defendant, white employees have been allowed to work significantly more overtime than black employees.

27. When Lead Mechanic Herman asked Supervisor Calhoun about overtime, Supervisor Calhoun stated that it was just third shift that was not allowed to work overtime.

28. Notably, the only employees on the third shift were black, Mechanic Shepard and Plaintiff.

29. Black employees were denied use of Paid Time Off ("PTO") when white employees are consistently allowed to use their PTO.

30. Specifically, in approximately May 2019, Plaintiff asked Supervisor Calhoun if he could use his PTO for Memorial Day weekend to go to his niece's graduation.

31. Supervisor Calhoun stated that Plaintiff could not use his PTO because Defendant's workload was heavy so no one would be allowed to take time off for the next couple of weeks.

32. Notably, two of Defendant's white employees, Andrew [Last Name Unknown] ("LNU") on the second shift, and Andrew LNU on the third shift, were allowed to take time off Memorial Day weekend.

33. When Regional Manager Mark Stets ("Regional Manager Stets") (white) came to Defendant's facility, Plaintiff spoke with him and reported Plaintiff was being discriminated against.

34. Plaintiff reported to Regional Manager Stets that Supervisor Calhoun would not allow Plaintiff to use his PTO while others were allowed to use theirs and other race discrimination that had been occurring, including Team Lead McCorkle's use of the word "nigger," and a noose being put on Mechanic Shepard's toolbox.

35. Regional Manager Stets asked Plaintiff to write a statement for him so that he could discuss the things Plaintiff reported with human resources.

36. Regional Manager Stets allowed Plaintiff to take the days off that he had previously requested and was denied by Supervisor Calhoun.

37. After Plaintiff took his approved days off, Supervisor Calhoun held a meeting at which he announced a new attendance policy.

38. During this meeting, Plaintiff asked if the attendance change was due to Plaintiff's request for days off.

39. Supervisor Calhoun responded that yes, the attendance change was because of Plaintiff.

40. Supervisor Calhoun began asking other employees if they thought that Supervisor Calhoun was racist.

41. When Supervisor Calhoun asked Trailer Mechanic Dennis Graves ("Mechanic Graves") (white) if he thought Supervisor Calhoun was racist, Mechanic Graves reported that he could see how the black guys think Supervisor Calhoun was racist because he does not give the black guys overtime, but he does the white guys, and he lets white guys use their paid time off ("PTO") without any questions, but he does not let the black guys.

42. On or about June 19, 2019, Plaintiff sent Regional Manager Stets an email, reporting to him the race discrimination that was going on in Defendant's facility including, but not limited to, black employees finding "nigger" carved on their cars, nooses being hung in the

workplace, Team Lead McCorkle's statement about quitting because he did not want to work with a shift full of "niggers," Supervisor Calhoun going around asking other employees if they thought Supervisor Calhoun was racist, and minorities not being given the same opportunities as white employees to work extra hours and make extra money.

43. In approximately July 2019, when Plaintiff went to his car to leave work, Plaintiff found that his car had a flat tire.

44. Shortly thereafter, Plaintiff also discovered that someone wrote on his car, with a sharpie, "snitch nigger."

45. On or about July 17, 2019, Plaintiff sent an email to Human Resources Meghan Henson ("HR Henson") to notify her of recent discriminatory incidents that had happened at work including, but not limited to, his flat tire and that someone wrote "snitch nigger" on his car.

46. Plaintiff also informed HR Henson that he felt uncomfortable at work and feared for his job, as well as his safety, and that he had sought out legal help with this matter.

47. On or about July 22, 2019, Plaintiff also sent an email to Human Resources Monigo Saygbay-Hallie ("HR Saygbay-Hallie"), reporting that Plaintiff had recently found his car at work with a flat tire, and that someone had written "snitch nigger" on his car.

48. In approximately late July 2019, Plaintiff found a dead bird in the inspection stickers drawer that is primarily used only by Plaintiff and one other employee.

49. In approximately July 2019, Supervisor Calhoun began to watch Plaintiff's every move, began nit-picking everything Plaintiff did, and asked other employees about Plaintiff.

50. On or about July 25, 2019, Plaintiff was written up for allegedly missing that a tire and windshield wiper needed to be replaced on a truck.

51. Notably, this was the first discipline Plaintiff had ever received.

52. Defendant never provided Plaintiff training to advance in his position as he was promised upon hire.

53. On or about August 1, 2019, Plaintiff was written up for allegedly missing some wheel seals that blew out on a truck.

54. On or about August 5, 2019, Plaintiff sent another email to HR Saygbay-Hallie reporting that he had been written up twice, two weeks in a row, and he felt like it was retaliation towards Plaintiff after he reported the flat tire and "snitch nigger" written on his car.

55. Plaintiff reported to HR Saygbay-Hallie about the dead bird in his service drawer, that he had reported it to Supervisor Calhoun but never heard back from him, he felt like he was treated as an outcast for his race, minority employees were not given the same opportunities to work overtime as white employees, and he was seeking outside help with this matter.

56. On or about August 13, 2019, Plaintiff filed for intermittent medical leave due to his hypertension and insomnia.

57. Shortly thereafter, Plaintiff received a write-up from Supervisor Calhoun on or about August 15, 2019.

58. Plaintiff's medical leave was approved on or about August 16, 2019.

59. However, Supervisor Calhoun gave Plaintiff another write-up on or about August 22, 2019.

### <u>COUNT I</u>
### Race Discrimination in violation of 42 U.S.C. §§ 2000e et seq.

60. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

61. Plaintiff is a member of a protected class because he is African American.

62. Plaintiff's race was at least a motivating factor in Defendant's discrimination against Plaintiff throughout his employment.

63. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

64. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

65. As shown by the foregoing, as a result of his race, Plaintiff suffered intentional discrimination at the hands of Defendant in violation of Title VII.

66. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

68. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

69. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

70. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor and against Defendant

for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT II**
**Retaliation in violation of Title VII 42 U.S.C. §§ 2000e et seq.**

71. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

72. Plaintiff engaged in a protected activity under Title VII by reporting what he believed in good faith to be race discrimination and retaliation to the Defendant.

73. Plaintiff suffered adverse employment actions when he was written-up and suffered further discrimination and retaliation after his good faith reports.

74. But for Plaintiff's reports of race discrimination and retaliation, he would not have been written-up or experienced further discrimination and retaliation.

75. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

76. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

77. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

78. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in a protected activity, in violation of Title VII.

79. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

80. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

81. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in Title VII.

82. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE,** Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### <u>COUNT III</u>
### Discrimination in violation of 42 U.S.C. §1981

83. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

84. Plaintiff is African American and thereby a member of a protected class.

85. During his employment, Plaintiff was subjected to the adverse action of being written-up

and treated differently than other employees because of his race.

86. Plaintiff's race was at least a motivating or determining factor in Defendant's decision to write-up Plaintiff and treat him differently than other employees.

87. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

88. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

89. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

90. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of the Defendant, based on his race, in violation of §1981.

91. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

92. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

93. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in §1981.

94. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including

the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

<u>**COUNT IV**</u>
**Retaliation in violation of 42 U.S.C. §1981**

95. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

96. Plaintiff engaged in a protected activity under 42 U.S.C. §1981 by reporting what he believed in good faith to be race discrimination and retaliation to Defendant on multiple occasions.

97. Plaintiff suffered an adverse employment action when he was written-up and suffered further discrimination and retaliation after his good faith reports.

98. Plaintiff's reports about race discrimination and retaliation were a motivating factor in the Defendant's decision to further discriminate and retaliate against Plaintiff.

99. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

100. Defendant failed to make good faith efforts to establish and enforce policies to prevent

illegal discrimination against its employees, including retaliation.

101. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

102. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in a protected activity, in violation of §1981.

103. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

104. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

105. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in §1981.

106. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other employers from like conduct in the future.

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT V
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Race Discrimination – Hostile Work Environment

107. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

108. Plaintiff is a member of a protected class because he is African American.

109. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race.

110. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

111. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

112. Defendant subjected Plaintiff to severe and pervasive race discrimination, including making derogatory comments regarding his race and treating him less favorably than Caucasian employees.

113. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiff.

114. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

115. Management level employees of Defendant knew or should have known of the racial

discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

116. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

117. Plaintiff's status as an African American was at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiff.

118. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

119. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

120. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

121. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

122. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

123. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to

deter it and other employers from like conduct in the future.

124. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys'

fees from Defendant.

**WHEREFORE,** Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

<u>COUNT VI</u>
**Violation under 42 U.S.C. §1981**
**Race Discrimination – Hostile Work Environment**

125. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

126. Plaintiff is a member of a protected class because he is African American.

127. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race.

128. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

129. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive

working environment.

130. Defendant subjected Plaintiff to severe and pervasive race discrimination, including making derogatory comments regarding his race and treating him less favorably than Caucasian employees.

131. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiff.

132. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

133. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

134. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

135. Plaintiff's status as an African American was at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiff.

136. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

137. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

138. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

139. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

140. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

141. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

142. Pursuant to the provisions of §1981, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE,** Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### <u>COUNT VII</u>
**Disability Discrimination in violation of 42 U.S.C. § 12101 et seq.**

143. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

144. Plaintiff is disabled pursuant to the ADAAA because he suffers from hypertension and insomnia; also, Defendant regarded Plaintiff as having these disabilities and has a record

of these disabilities; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

145. Plaintiff's physical impairments substantially affect several major life activities including, but not limited to, sleeping, thinking, sitting, standing, walking, and working as described in the ADAAA.

146. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

147. Plaintiff's disabilities were motivating factors in his discriminatory treatment.

148. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

149. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including disability discrimination.

150. As shown by the foregoing, as a result of his disabilities, Plaintiff suffered intentional discrimination at the hands of Defendant in violation of the ADAAA.

151. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

152. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

153. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

154. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

155. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay, front-pay, compensatory damages, including but not limited to garden variety emotional distress; equitable relief, including but not limited to f injunctive relief; punitive damages; reasonable attorneys' fees and costs incurred herein; pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT VIII
### Retaliation in violation of 42 U.S.C. § 12101 et seq.

156. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

157. Plaintiff engaged in a protected activity by reporting his disabilities to Defendant and requesting the reasonable accommodation of time off of work for his disabilities.

158. Defendant gave Plaintiff multiple write-ups as a result of Plaintiff's above-referenced protected activities.

159. The fact that Plaintiff engaged in a protected activity was at least a motivating factor in Defendant's decision to take adverse action against him.

160. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

161. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including retaliation.

162. As shown by the foregoing, as a result of engaging in a protected activity, Plaintiff suffered intentional retaliation at the hands of Defendant in violation of the ADAAA.

163. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

164. As a further and direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

165. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

166. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

167. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay, front-pay, compensatory damages, including but not limited to garden variety emotional distress; equitable relief, including but not limited to injunctive relief; punitive damages; reasonable attorneys' fees and costs incurred herein;  pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**FMLA Retaliation in Violation of 29 U.S.C. § 2615(a)(1)**

168. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

169. Plaintiff engaged in a protected activity by requesting leave pursuant to the FMLA due to his insomnia and hypertension.

170. Plaintiff's request for leave pursuant to the FMLA was the determining factor in Defendant's decision to issue Plaintiff multiple write-ups.

171. Plaintiff suffered an adverse employment action when Defendant issued Plaintiff multiple write-ups after requesting FMLA leave.

172. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

173. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

174. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized the FMLA violation against Plaintiff.

175. As shown by the foregoing, Defendant's conduct was not in good faith, and Defendant did not have reasonable grounds for believing that the act or omission was not a violation of the FMLA.

176. Pursuant to 29 U.S.C. §2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

177. As a further and direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

178. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay, front-pay, compensatory damages, including but not limited to garden variety emotional distress; relief, including but not limited to injunctive relief; punitive damages; reasonable attorneys' fees and costs incurred herein; pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,


CORNERSTONE LAW FIRM


By: _____/s/ Brittany C. Mehl_____
Ryan M. Paulus        D Kan 78276
r.paulus@cornerstonefirm.com
Brittany C. Mehl        D Kan 78534
b.mehl@cornerstonefirm.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone            (816) 581-4040
Facsimile            (816) 741-8889
ATTORNEYS FOR PLAINTIFF